UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| GENEVA WOOD FUELS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-cv-00191-JAW |
| | ) | |
| EARTH CARE PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT EARTH CARE'S MOTION TO DISMISS OR TO TRANSFER AND TO STAY DISCOVERY AND ON PLAINTIFF GENEVA'S UNOPPOSED MOTION TO EXTEND DISCOVERY DEADILNES**

Concluding that a forum selection clause that governs "legal actions brought to enforce or construe any of the provisions" of an equipment supply contract does not apply to tort claims arising out of an explosion allegedly caused by the defendant's design and construction of a wood pellet plant, the Court denies the defendant's motion to dismiss or transfer. Having retained jurisdiction, the Court denies the defendant's motion to stay discovery and grants the plaintiff's unopposed motion to extend discovery deadlines.

**I.     STATEMENT OF FACTS**

**A.     Procedural History**

On April 18, 2012, Geneva Wood Fuels, LLC, (Geneva) filed suit in state of Maine Superior Court for Franklin County against Earth Care Products, Inc. (Earth Care), alleging that Earth Care was negligent and strictly liable for physical damage to a Geneva wood pellet plant caused by an August 8, 2009 explosion.  *State*

*Ct. Record* Attach. 1, *Compl.* (ECF No. 3-1) (*Compl.*).  On June 15, 2012, Earth Care removed the case to this Court based on diversity jurisdiction.  *Notice of Removal* ¶¶ 4-5 (ECF No. 1).  On July 24, 2012, Earth Care filed a motion to dismiss or transfer.  *Def.'s Mot. to Dismiss Pursuant to Rule 12(b)(3) or in the Alternative to Trans. This Matter to the U.S. Dist. Ct. for the Dist. of Kansas* (ECF No. 11) (*Def.'s Mot.*).  Geneva responded on August 14, 2012.  *Pl.'s Opp'n to Def.'s Mot. to Dismiss or in the Alternative to Transfer* (ECF No. 12) (*Pl.'s Opp'n*).  Earth Care replied on August 28, 2012.  *Def. Earth Care's Reply Mem. to Pl.'s Opp'n to Mot. to Dismiss or Transfer* (ECF No. 15).  On October 19, 2012, Earth Care moved to stay discovery pending a decision on the motion to transfer or dismiss.  *Def.'s Mot. to Stay Disc. Pending Decision on Mot. to Transfer or Dismiss* (ECF No. 16).  Geneva responded in opposition on October 24, 2012.  *Pl.'s Opp'n to Def.'s Mot. to Stay Disc.* (ECF No. 17).

    **B.**    **The Contracts**

There are four agreements at issue in this case.  The first is a hold harmless agreement among Earth Care, Geneva[1], and Pellet Systems International, Inc. (PSI).  *Def.'s Mot.* Attach 5, *Hold Harmless Agreement* (ECF No. 11-5).  It was signed by all three parties on February 20, 2008.  *Id.*  It recited that Geneva had entered into contractual agreements with PSI "to engineer, procure, and construct a wood pelleting plant in Strong, Maine,"[2] that PSI had "requested quotations for equipment supply from [Earth Care] for wood drying and wood burning for the

---

[1]    The Hold Harmless Agreement refers to "Geneva Energy" (after which is handwritten "Maine LLC") rather than "Geneva Wood Fuels, LLC."

[2]    Although the Hold Harmless Agreement states that Geneva had already entered into an agreement with PSI for the wood pelleting plant by February 20, 2008, the Turnkey Agreement described below was not signed until May 31, 2008.

pellet plant," and that Geneva had "requested an overview meeting among the three parties asking [Earth Care] to offer its best solutions addressing issues in previous design and equipment proposed for drying." *Id.* The parties agreed in the Hold Harmless Agreement that Earth Care "will not be named or brought into any legal action caused by [Geneva] or PSI." *Id.*

On May 13, 2008, PSI entered into a thirty-four page contract with Geneva entitled "Turnkey Equipment Supply and Installation Agreement." *Def.'s Mot.* Attach. 4, *Turnkey Equipment Supply and Installation Agreement*, 1 (Turnkey Agreement). The contract price was $7,500,000.00. *Id.* at 5. The contract describes the project: "A nominal guaranteed, 15 Tonne Per Hour Pellet Manufacturing Plant, located in the town of Strong, Maine, USA." *Id.* at 1. PSI agreed to provide services including "Project Management, Engineering, Procurement and Installation" of the plant. *Id.* at 1. The Turnkey Agreement contained the following clause:

> **<u>The laws of the State of Maine, USA will be choice of laws for interpretation and/or remedy of disputes resulting from this contract. In the event of a commercial or legal dispute, the parties covenant to submit the dispute to binding arbitration which shall be final, without recourse of appeal.</u>**

*Id.* at 7 (bold print and underline in contract).

On May 30, 2008, Earth Care entered into a contract with PSI under which Earth Care agreed to furnish PSI "[m]achinery and equipment covered by this Agreement in accordance with the specifications, terms and conditions outlined herein for the project referenced as **<u>Wood Pellet Plant, Geneva</u>**." *Def.'s Mot.* Attach. 2, *Agreement No. MDI-06-0299-08*, 1 (ECF No. 11-2) (Earth Care—PSI

Contract). The contract price was $3,750,000.00 for forty-four itemized pieces of equipment or services. *Id.* at 1-8. Among the clauses in this contract is a forum selection clause:

> CONSTRUCTION. This Agreement constitutes the entire agreement between the parties and shall be construed and enforced in accordance with the laws of the State of Kansas. Seller shall not be bound by any agent's, employees or dealer's representation, promise or inducement not set forth herein. No course of prior dealings between the parties shall be relevant or admissible to supplement, explain or vary any of the terms of Agreement. The parties agree that the proper and exclusive forum and venue in all legal actions brought to enforce or construe any of the provisions of the Agreement shall be in the Federal District Court for southeast Kansas or, if federal jurisdiction is lacking in such legal action, in the District Court of Kansas. Each of the parties hereto irrevocably waives any claim that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum and further irrevocably waives the right to object, with respect to such suit, action or proceeding brought in any such court, that such court does not have jurisdiction over such party.

*Id.* at 10.

In August 2008, Geneva, Earth Care and PSI entered into an "Assignment Agreement." *Def.'s Mot.* Attach. 3, *Assignment Agreement*, 1 (ECF No. 11-3). The assignment is prefaced by a statement confirming that PSI "is contracted to Geneva . . . for a turn-key wood pelleting system on [Geneva's] site and building in Strong, Maine" and Earth Care "is subcontracted by PSI to provide [Earth Care's] turn-key and drying system for $3,750,000." *Id.* It notes that Geneva requested that PSI assign Earth Care's agreement directly to Geneva. *Id.* The Assignment Agreement states that Geneva paid Earth Care directly in the amount of $1,875,000 and that the balance due Earth Care was $1,875,000. *Id.* The Agreement provided that Earth Care's "first shipment of equipment payment is due in the amount of

4

$798,900 and will be wired to [Earth Care]'s bank from [Geneva] upon all parties signing and dating this assignment." *Id.*

### C. Geneva's Complaint

In its April 18, 2012 Complaint, Geneva alleges that on August 8, 2008 an explosion occurred at the Geneva plant, causing its insurer to pay over Seven Million Dollars in insurance coverage. *Compl.* ¶ 4. The Complaint alleges that "Geneva hired Earth Care to design, specify and supply equipment for the Geneva plant." *Id.* ¶ 7. Geneva claims that Earth Care turned the plant over to it in February 2009. *Id.* ¶ 13. It says that Earth Care designed the system "so that dry fines would be returned downstream from the Wood Dryer." *Id.* ¶ 10. However, after the turnover, "there continued to be problems with wood fines and dust emitting from the plant." *Id.* ¶ 14. Earth Care determined that dust was being emitted from a "horn air intake port" and "came to the Geneva plant to address the dust problem." *Id.* ¶¶ 15, 19. It recommended a solution, which Geneva adopted. *Id.* ¶¶ 20, 23. Geneva claims that the August 8, 2009 explosion occurred "in the dryer due to the build-up of dry fines and the ignition of those fines by a spark from the furnace" and alleges that the "lack of any spark detection, suppression or immersion systems up-stream from the Dryer allowed the ignition of the dry fines by a spark from the Burner." *Id.* ¶¶ 25, 27.

Geneva is proceeding against Earth Care under three theories: (1) negligence; (2) negligent failure to warn; and (3) strict liability. *Id.* ¶¶ 28-44. Each of these

theories blames the explosion on Earth Care's "design, specification, modification and construction of the wood pellet plant." *Id.* ¶¶ 30-32, 36-37, 40-42.

## II. THE PARTIES' POSITIONS

### A. Earth Care's Motions

In its motion, Earth Care says that there is a forum selection clause in its contract with Geneva that requires any legal actions between Geneva and Earth Care to be initiated in the United States District Court for southeastern Kansas. *Def.'s Mot.* at 2. Contending that such clauses are routinely enforced, Earth Care seeks either to have the matter dismissed or transferred to Kansas. *Id.* at 2-4.

### B. Geneva's Response

In its response, Geneva contends that the contract that contains the forum selection clause upon which Earth Care has based its motion is not at issue in this case. *Pl.'s Opp'n* at 4-5. Furthermore, Geneva maintains that by its terms, the forum selection clause does not apply because the forum selection clause addresses only contractual disputes and Geneva's claims against Earth Care are non-contractual. *Id.* at 5-7. Finally, Geneva asserts that if the forum selection clause applies, the Court should refuse to enforce it based on an analysis of the four factors set forth in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). *Pl.'s Opp'n* at 7-8.

### C. Earth Care's Reply

In reply, Earth Care argues that because its contract with Geneva is a key fact underlying each of Geneva's theories of recovery, the forum selection clause

6

should be honored.  *Def.'s Reply* at 1-2.  Earth Care maintains that to resolve Geneva's claims, the Court will "have to first look to the content of the contract between Geneva and Earth Care to determine the obligation assumed by each of the parties."  *Id.* at 2.  Earth Care disputes Geneva's reading of the forum selection clause and contends that by its terms the clause applies to "all legal actions."  *Id.* at 3.  Earth Care points to the First Circuit case of *Huffington v. T.C. Group LLC*, 637 F.3d 18 (1st Cir. 2011) as resolving a similar clause in favor of transfer.  *Def.'s Reply* at 2-4.  Finally, Earth Care rejects Geneva's claims of contractual overreaching and unenforceability.  *Id.* at 4-5.

### III.   DISCUSSION

#### A.   Legal Standards

Although Earth Care brought its motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) (improper venue), the First Circuit "treat[s] a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)."  *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (citing *Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 387 & n.3 (1st Cir. 2001)).  In ruling on a motion to dismiss, a court is required to "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff."  *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (quoting *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)).

To decide a motion to dismiss under Rule 12(b)(6), the court "may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). However, a court may review certain documents, the authenticity of which is not challenged, when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—[those] document[s]"; when that happens, the documents "effectively merge[ ] into the pleadings and the trial court can review [them] in deciding a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998)) (internal punctuation omitted). Specifically, a court may consider documents central to a plaintiff's claims and documents referred to in the complaint without deciding the motion under the summary judgment standard. *Alt. Energy*, 267 F.3d at 34. In resolving a forum selection clause issue on a motion to dismiss, the First Circuit typically examines the contract containing the clause to determine its applicability and effectiveness. *See, e.g., Huffington*, 637 F.3d at 21-23.

Under 28 U.S.C. § 1404(a), a district court is authorized "[f]or the convenience of parties and witnesses, in the interest of justice," to transfer any civil action to any other district or division where it might have been brought. The burden of proving the propriety of a transfer lies with the party seeking it, and "there is a strong presumption in favor of the plaintiff's choice of forum." *Coady v.*

8

*Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). At the same time, the First Circuit has held that a forum selection clause is prima facie valid and enforceable "absent a strong showing that it should be set aside." *Huffington*, 637 F.3d at 23 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). "The Supreme Court has listed four grounds for finding a forum clause unenforceable:

> (1) the clause was the product of fraud or overreaching;
>
> (2) enforcement would be unreasonable and unjust;
>
> (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that the party challenging the clause will for all practical purposes be deprived of his day in court; or
>
> (4) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."

*Huffington*, 637 F.3d at 23 (internal citations and punctuation omitted).

### B. Jurisdiction and Venue

There is no claim that this Court is without jurisdiction over the controversy between Geneva and Earth Care. The two parties are citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars, thereby meeting the jurisdictional requirements of 28 U.S.C. § 1332(a)(1). Furthermore, based on the allegations in the Complaint, the District of Maine is an appropriate venue for the initiation of the claim because it is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).

### C. The Forum Selection Clause

In *Huffington*, the First Circuit was careful to distinguish among types of forum selection clauses. *Id*. The *Huffington* Court points out that contracts with forum selection clauses with "embracing language"—like "with respect to," "with reference to," "relating to," "in connection with," and "associated with"–"have usually been construed broadly." *Id*. at 22-23. *Id*. By contrast, forum selection clauses with language like "to enforce" or "to construe" intend a "narrower focus." *Id*. at 23.

Here, the forum selection clause by its terms governs only "legal actions brought to enforce or construe any of the provisions" of the equipment supply contract, calling for a narrow view of its enforceability. Geneva has limited its theories of recovery to negligence and strict liability. As Geneva is not seeking to "enforce or construe any of the provisions" of the equipment supply contract, the forum selection clause has no application to this case.

### D. The Contracts and the Complaint

Moreover, even if the Court were to conclude that the forum selection clause embraced non-contractual claims, the clause is found in an equipment supply contract, whereas Geneva attributes the explosion primarily to Earth Care's alleged failures in designing and constructing the plant.

There is an obvious difference between an engineering and construction contract and an equipment supply contract. Reviewing the contracts in this case, the Court views the turnkey contract between PSI and Geneva for the "project

management, engineering, procurement and installation" of the Geneva pellet manufacturing plant as markedly distinct from the equipment supply contract between PSI (later Geneva) and Earth Care. PSI, Geneva, and Earth Care carefully assigned the equipment supply contract. Yet, oddly, once PSI faltered and Geneva brought in Earth Care in place of PSI as the designer, engineer, and installer of the plant itself, it appears there was no written agreement as to the terms of this decidedly new arrangement between Geneva and Earth Care. Indeed, if the parties had assigned the turnkey contract, not only would Maine law likely apply, but the dispute would likely be subject to arbitration.

One possibility is that the August 2008 Assignment Agreement constituted the parties' agreement that the turnkey contract would be assigned; however, the Court does not agree with that interpretation of the language of the Assignment Agreement. The Assignment Agreement expressly mentions the subcontract between PSI and Earth Care for $3,750,000, an initial payment of $1,875,000 directly from Geneva, and a balance due Earth Care of $1,875,000. *Assignment Agreement* at 1. The Assignment Agreement also specifically mentions Earth Care's "first shipment of equipment payment" as being due and Geneva's agreement to wire $798,900 to Earth Care. *Id.* In the Court's view, the language of this assignment is directed to the subcontract between PSI and Earth Care and does not extend to the turnkey contract between PSI and Geneva.

Another possibility, which is the one Earth Care presses in its reply, is that the contract between Geneva and Earth Care that resulted from the Assignment

11

Agreement was an equipment supply contract only and that "Geneva eliminated PSI's role and stepped into PSI's shoes." *Def.'s Reply* at 2. Under this view, the forum selection clause in the equipment supply contract must apply to disputes between Geneva and Earth Care. The flaw in Earth Care's argument is that as its motion is a motion to dismiss, the Court must accept the allegations in Geneva's Complaint and in that Complaint, Geneva alleges that it hired Earth Care "to design, specify and supply equipment for the Geneva plant." *Compl.* ¶ 7.

With these conclusions, the question narrows to whether a forum selection provision in an equipment supply contract could control the forum for a lawsuit challenging Earth Care's "design, specification and supply of materials for the plant." The Court concludes that the forum selection clause in the equipment supply contract, even if it contained more embracing language, would not govern a dispute about the design and construction of the plant. Here, Geneva's dispute with Earth Care—as alleged in the Complaint—is not about the equipment that Earth Care supplied under the equipment supply contract. Rather, it is about alleged design failures and equipment that Geneva says Earth Care should have, but did not supply.[3]

### E.    Motion to Stay

This Order eclipses the need for Earth Care's motion to stay discovery (ECF No. 16) and the Court DENIES that motion.

---

[3]    In the Complaint, Geneva alleges that "materials supplied by Earth Care" were a cause of the explosion. *Compl.* ¶ 32(i). However, the gravamen of the Complaint focuses on Earth Care's overall design of the plant and its failure to provide a dust control system. To the extent that one of many allegations in the Complaint may call into play the equipment supply contract, the Court is not convinced that this subsidiary allegation would control the remainder of Geneva's claim.

**F.    CONCLUSION**

The Court DENIES Earth Care Products, Inc.,'s Defendant's Motion to Dismiss Pursuant to Rule 12(b)(3) or in the Alternative to Transfer This Matter to the U.S. District Court for the District of Kansas (ECF No. 11) and its Defendant's Motion to Stay Discovery Pending Decision on Motion to Transfer or Dismiss (ECF No. 16).  The Court GRANTS Geneva Wood Fuels, LLC,'s Plaintiff's Unopposed Motion to Extend Discovery Deadlines (ECF No. 18).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 6th day of December, 2012